as it stood in the act of 1841. The main portions of the two sections are in the same words in both acts; and the mere verbal differences between them do not seem to me to change their substantial import. Such was the view entertained and very impressively enforced by the supreme court of Massachusetts, in Cronan v. Cotting, 104 Mass. 245, and by the circuit court of the United States for the Western district of Wisconsin, in Grover v. Clinton [Case No. 5,845]. Mr. Justice Davis concurring in the opinion. If this view is correct, as I think it is, then Chapman v. Forsyth [supra] conclusively determines the meaning of the act of 1867; and excludes from the operation of the exception the debt sued for here.

It is evident that the thirty-third section of the act of 1867 was framed upon the model of the corresponding section of the act of 1841. They are ejusdem verbis, except that the words "or as executor, administrator, guardian, or trustee" immediately following the phrase "defalcation as a public officer," in the act of 1841, are omitted in the act of 1867; and fiduciary "character" is substituted in the latter for fiduciary "capacity" in the former. The act of 1867 must then be read, "No debt created by the 'defalcation' of the bankrupt 'as a public officer,' or by his defalcation 'while acting in any fiduciary character, shall be discharged.'" So applying the rule noscitur a sociis to the interpretation of this language, its meaning is clearly the same as that employed in the act of 1841. The general words, "or while acting in any fiduciary character," are directly associated with the specific terms, "defalcation as a public officer," and must, therefore, be construed as qualifying each other, and referring to the same class of trusts. Moreover the term "defalcation," which must be read in connection with the phrase in question, to make it intelligible, imports a greater degree of culpability than that which attaches to a refusal or failure to pay a debt, even though it is attended by a breach of confidence. In involves "moral turpitude or intentional wrong," hence it is associated with liabilities of like moral character and imports a classification of kindred subjects.

I am, therefore of opinion: (1) That the debt in suit was not created by the fraud of the defendants, as that term is defined in Neal v. Scruggs [supra]. (2) That the thirty-third section of the bankrupt law is substantially the same with its kindred section in the act of 1841, and that its scope and meaning are, therefore, authoritatively determined by the decision of the supreme court in Chapman v. Forsyth [supra]. (3) That adopting the rule of construction applied in both of the cases referred to, only technical or special trusts, as contradistinguished from those which the law implies from the contract, are within the meaning of the thirty-third section of the bankrupt act. (4) That the debt in question is not included in any of the classes of excepted indebtedness, and would be bound by a

discharge; and is, therefore, equally within the protection of the composition pleaded. (5) That the defendants are entitled to judgment non obstante veredicto, which is accordingly ordered to be entered.

## Case No. 7,651.

### KEIRLL v. McINTIRE.

[2 Cranch, C. C. 670.] [1]

Circuit Court, District of Columbia. May Term, 1826.

PRISON-BOUNDS BOND —SUBSEQUENT COMMITMENT —ESCAPE—ACTION AGAINST SURETY—AUTHORITY FOR SECOND COMMITMENT.

1. If a defendant, who is out upon a prison-bounds bond, given upon a capias ad respondendum, petitions for the benefit of the act for the relief of insolvent debtors [2 Stat. 237], and upon allegations filed is found guilty, in a summary proceeding before a judge who orders him into close custody, and that he be precluded from any benefit under the act, whereupon the debtor is committed to close custody, and afterwards escapes, the creditor at whose suit he was taken cannot maintain an action upon the prison-bounds bond, for that escape.

[Cited in McClean v. Plumsell, Case No. 8,-693.]

2. Quaere, whether. if a petitioning debtor be convicted of fraud, upon allegations in a summary proceeding before a judge out of court. the judge has authority to order him into close custody; or whether the judge is merely to refuse to grant him the relief he seeks under the act?

Debt, on a prison-bounds bond against [Alexander McIntire] the surety of Daniel Donohogue, who was taken upon a capias ad respondendum at the suit of the present plaintiff, John W. Keirll. Donohogue applied to one of the judges. to be discharged under the insolvent act. The plaintiff filed allegations charging the debtor with having disposed of part of his property with intent to defraud his creditors, upon which an issue was made up and tried by a jury, who found the debtor guilty; whereupon the judge ordered "that the said Daniel Donohogue be remanded to close custody, and be precluded from any benefit under the act of congress entitled an act for the relief of insolvent debtors within the district of Columbia." After being thus remanded he escaped, and broke the bounds; and the plaintiff brought this action of debt upon the prison-bounds bond, which was dated on the 7th of April, 1824, and in his declaration set forth the bond with its condition, which was in the usual form, and assigned for breach that the debtor (Donohogue) did not keep, remain, and stay within the prison-bounds, but departed therefrom on the 17th of May, 1824, before he had by due course of law been finally discharged from the said prison and bounds.

To this declaration the defendant, after protesting that Donohogue did not break the bounds, as alleged, pleaded specially, setting

1 [Reported by Hon. William Cranch, Chief Judge.]

forth the arrest and commitment of Donohogue upon the capias ad respondendum, and the prison-bounds bond; and averring that he did continually keep, remain, and stay within the prison bounds from the time of the execution and delivery of the bond until the 1st of June, 1824, when he was brought before CRANCH, Chief Judge of the circuit court of the District of Columbia, upon allegations filed against him by the plaintiff as a creditor, charging that he had disposed of part of his property with intent to defraud his creditors, upon which allegations issues were made up and tried by a jury, who found him guilty; whereupon it was ordered by the judge that he should be remanded to close custody; and be precluded from any benefit under the act; and that he was so remanded, and committed to close custody in the jail of Washington county, and was not any longer entitled to the benefit of the prison rules or limits, for which the bond was given, nor to any benefit under the act; and that the bond was no longer of any force or effect to obtain for the said Daniel the benefit of the prison bounds, nor was the defendant any longer liable or bound that the said Daniel should thereafter keep within the same. To this plea the plaintiff replied that Donohogue was not, after the making and delivery of the bond, remanded to close custody, or in any manner seized or taken or rendered or committed to close custody in manner and form as the defendant in his plea alleged, in virtue, or execution, of the writ or process in the condition of the bond mentioned, or in any manner at the suit or instance or by the procurement of the plaintiff, under or by virtue of the said writ or process, or in execution thereof; "and this the plaintiff is ready to verify," &c. To this replication the defendant rejoined, that the said Daniel was committed to close custody by the order of the said judge, as this defendant hath already in pleading alleged, passed upon the finding of the jury upon the issue joined on the allegations filed against the said Daniel by the plaintiff as alleged by the defendant in his plea aforesaid, and upon no other cause, process, or order; "and so the defendant says that the said commitment last mentioned was by the procurement of the plaintiff, and in virtue of the original capias in the said condition mentioned; and this he is ready to verify."

To this rejoinder the plaintiff demurred specially, and assigned the following reasons: 1. That the defendant, in rejoining to the plaintiff's replication as aforesaid, hath not taken issue upon, or in any manner traversed or confessed and avoided the matter by the plaintiff above in replying pleaded as aforesaid. 2. That the said rejoinder is a departure from the issue upon the matter pleaded by the plaintiff in his said replication; and also from the matter of the defendant's said plea. 3. That the matter by the defendant above in rejoining pleaded is wholly immaterial, and impertinent to the matter by the said plaintiff above in replying pleaded. 4. That the said rejoinder is a mere repetition of the matter of the plea, and offers to put the same matter in issue, without in any manner traversing or confessing and avoiding the matter of the said replication. 5. That the said rejoinder is altogether immaterial, informal, and vicious. The defendant joined in demurrer.

Mr. Key, for defendant, contended, that the liberty of the prison bounds was one of the benefits of the insolvent act of March 3, 1803 (2 Stat. 237), it being given by the 10th section of that act; and that when the defendant ceased, by law, to enjoy that benefit the bond ceased to be obligatory; and when the debtor was committed to close custody by the order of the judge the bond was of no use. The liberty and the bond are correlative; neither can exist without the other. The commitment being at the instance of the plaintiff, he ought not to have the benefit of both. If he relies upon the commitment he must relinquish the bond. His remedy is against the marshal for an escape.

THRUSTON, Circuit Judge, requested to hear the other side.

Mr. Wallach and Mr. Jones, for plaintiff. The commitment and the order for commitment to close custody were illegal and void. The judge had no jurisdiction or power to order the commitment. The only judgment which the judge could give was to order that the debtor's petition should be dismissed. The penalty is merely negative. The benefit from which he is to be precluded, is, what is vulgarly called "the benefit of the act," that is, a personal discharge from arrest for any debt contracted before the discharge. That was what he was seeking and from which he was to be precluded; it was not what he already enjoyed. It was future benefit, which was to be denied to him, not what he already had. The party may be required to answer interrogatories, not to convict him of a crime or a forfeiture, but to prevent him from obtaining that which he is seeking. The judge acts ministerially. He has no power to commit. He has no power in this summary proceeding which is not expressly given to him by statute.

THE COURT (CRANCH, Chief Judge, contra) rendered judgment for the plaintiff on the demurrer.